1  GEORGE J. GIGOUNAS (Bar No. 209334)
   george.gigounas@dlapiper.com
2  **DLA PIPER LLP (US)**
   555 Mission Street, Suite 2400
3  San Francisco, CA 94105
   Tel: 415.836.2500
4  Fax: 415.836.2501

5  KIMBERLY S. HYDE (Bar No. 274623)
   kimberly.hyde@dlapiper.com
6  **DLA PIPER LLP (US)**
   401 B Street, Suite 1700
7  San Diego, CA 92101
   Tel: 619.699.2700
8  Fax: 619.699.2701

9  Attorneys for Defendant and Counter-
   Claimant LOCKHEED MARTIN
10 CORPORATION

11 List of Counsel continued on next page:

12             UNITED STATES DISTRICT COURT

13            SOUTHERN DISTRICT OF CALIFORNIA

14 SAN DIEGO UNIFIED PORT              CASE NO. 07-CV-1955-BAS (WVG)
   DISTRICT,
15                                     **MEMORANDUM OF POINTS AND**
                Plaintiff,             **AUTHORITIES IN SUPPORT OF**
16                                     **LOCKHEED MARTIN**
                                       **CORPORATION, GENERAL**
17         v.                          **DYNAMICS CORPORATION, AND**
                                       **SAN DIEGO UNIFIED PORT**
18 GENERAL DYNAMICS                    **DISTRICT'S JOINT MOTION FOR**
   CORPORATION; LOCKHEED               **ORDER CONFIRMING**
19 MARTIN CORPORATION; and             **SETTLEMENT AND BARRING**
   DOES 1 through 100, Inclusive,      **AND DISMISSING CLAIMS**
20
                Defendants.            Courtroom: 4B
21                                     Complaint Filed: May 11, 2006

22                                     Hearing Date: May 8, 2017
                                       Judge: Hon. Cynthia Bashant
23
                                       **NO ORAL ARGUMENT UNLESS**
24                                     **REQUESTED BY COURT**

25

26

27

28

1  List of Counsel continued from previous page:

2  Thomas A. Russell, Esq. (Bar No. 108607)
   John N. Carter, Esq. (Bar No. 246886)
3  *egross@portofsandiego.org*
   *jcarter@portofsandiego.org*
4  SAN DIEGO UNIFIED PORT DISTRICT
   OFFICE OF THE PORT ATTORNEY
5  3165 Pacific Highway
   San Diego, CA 92101
6  Telephone:  (619) 686-6219
   Facsimile:  (619) 686-6444
7
   William D. Brown (Bar No. 125468)
8  Wentzelee Botha (Bar No. 207029)
   *bbrown@brownandwinters.com*
9  *wbotha@brownandwinters.com*
   BROWN & WINTERS
10 120 Birmingham Drive, Suite 110
   Cardiff-by-the-Sea, CA  92007
11 Telephone:  (760) 633-4485
   Facsimile:   (760) 633-4427
12
   William J. Jackson (Texas Bar No. 00784325 - admitted Pro Hac Vice)
13 Micheal W. Dobbs (Texas Bar No. 24012533 - admitted Pro Hac Vice)
   *bjackson@kelleydrye.com*
14 *mdobbs@kelleydrye.com*
   Kelley Drye / Jackson Gilmour & Dobbs LLP
15 515 Post Oak Blvd., Suite 900
   Houston, TX  77027
16 Telephone: (713) 355-5000
   Facsimile:  (713) 355-5001
17
   Attorneys for Plaintiff
18 SAN DIEGO UNIFIED PORT DISTRICT

19 Kelly E. Richardson (Bar No. 210511)
   Jennifer P. Casler-Goncalves (Bar No. 259438)
20 *Kelly.richardson@lw.com*
   *Jennifer.casler-goncalves@lw.com*
21 LATHAM & WATKINS LLP
   12670 High Bluff Drive
22 San Diego, CA 92130-3086
   Telephone: (858) 523-5400
23 Facsimile: (858) 523-5450

24 Attorneys for Defendant and Counter-Claimant
   GENERAL DYNAMICS CORPORATION

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................. 1

II.     PROCEDURAL AND FACTUAL BACKGROUND .................................. 3

    A.   The Tow Basin Site ............................................................ 3

    B.   Marine Terminal and Railway Facility Site ......................... 4

    C.   The Parties' Alleged Activities at the Sites ........................ 5

        1.   General Dynamics ..................................................... 5

        2.   Lockheed Martin ....................................................... 5

        3.   Port District ............................................................. 6

    D.   The Lawsuits ...................................................................... 7

    E.   Mediations ......................................................................... 8

    F.   The Contamination and Estimated Cleanup Costs ............. 8

III.    PROPOSED SETTLEMENT TERMS ................................................. 8

IV.     STANDARDS OF REVIEW ............................................................ 9

    A.   CERCLA Favors Settlement and Allows Contribution Bars ............. 10

    B.   Section 6 of the Uniform Comparative Fault Act ............... 10

    C.   California Code of Civil Procedure Section 877 and 877.6 ............... 11

V.      THE SETTLEMENT AGREEMENT SHOULD BE APPROVED ............ 12

    A.   The Settlement Agreement is Procedurally and Substantively Fair ............... 12

    B.   The Settlement Agreement Is Entitled to a Presumption of Fairness. ............... 13

    C.   The Settlement Agreement Is Procedurally Fair Even Without a Presumption of Fairness. ............... 13

    D.   The Settlement Agreement Is Substantively Fair Even Absent Any Presumption of Fairness. ............... 14

    E.   The Settlement Agreement Is Reasonable. ......................... 15

    F.   The Settlement Agreement Is Consistent with CERCLA's Objectives. ............... 15

VI.     THE PARTIES ARE ENTITLED TO CONTRIBUTION PROTECTION ............... 16

    A.   Contribution Protection Should Also Should Be Granted Under California Code of Civil Procedure Section 877.6 ............... 17

VII.    CONCLUSION ............................................................................. 18

# TABLE OF AUTHORITIES

**Page**

CASES

*Acme Fill Corp. v. Althin CD Med., Inc.*,
   No. C 91-4268 MMC, 1995 WL 822664 (N.D. Cal. Nov. 2, 1995) ................. 17

*Adobe Lumber, Inc. v. Hellman*,
   2009 WL 256553 (E.D. Cal. Feb. 3, 2009) ....................................................... 16

*Adobe Lumber, Inc. v. Hellman*,
   2010 U.S. Dist. LEXIS 139778 (E.D. Cal. March 4, 2010) .............................. 11

*AmeriPride Servs. Inc. v. Texas E. Overseas Inc.*,
   782 F.3d 474 (9th Cir. 2015) ............................................................................ 11

*AmeriPride Servs. Inc. v. Valley Indus. Serv., Inc.*,
   2007 WL 1946635 (E.D. Cal. 2007) ........................................................... 16, 11

*Arizona v. City of Tucson*,
   761 F.3d 1005 (9th Cir. 2014) .......................................................................... 10

*Arizona v. Nucor Corp.*,
   825 F. Supp. 1452 (D. Ariz. 1992) ........................................................ 12, 14, 15

*Burlington N. & Santa Fe Ry. Co v. U.S.*,
   556 U.S. 599 (2009) ......................................................................................... 10

*Cal. Dep't of Toxic Substances Control v. Hearthside Residential Corp.*,
   613 F.3d 910 (9th Cir. 2010) ............................................................................ 10

*City of N.Y. v. Exxon Corp.*,
   697 F. Supp. 677 (S.D.N.Y. 1988) ................................................................... 15

*City of San Diego v. Nat'l Steel & Shipbuilding Corp.*,
   No. 09-cv-2775 WQH BGS, 2015 WL 1808527 (S.D. Cal.
   Apr. 21, 2015) ................................................................................. 10, 11, 15, 16

*Fireman's Fund Ins. Co. v. City of Lodi*,
   302 F.3d 928 (9th Cir. 2002) ............................................................................ 10

# TABLE OF CONTENTS
### (continued)

**Page**

*Linney v. Alaska Cellular P'ship,*
    1997 WL 450064 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d 1234 (9th
    Cir. 1998)...................................................................................................... 13

*N. County Contractor's Ass'n v. Touchstone Ins. Servs.,*
    27 Cal. App. 4th 1085 (1994)......................................................................... 17

*Officers for Justice v. Civil Service Com'n of City and
    County of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) .......................................................................... 10

*Tech-Bilt, Inc. v. Woodward-Clyde Assocs.,*
    38 Cal. 3d 488 (1985)............................................................................... 12, 17

*Tyco Thermal Controls LLC v. Redwood Indus.,*
    2010 U.S. Dist. LEXIS 91842 (N.D. Cal. 2010).................................. 12, 16, 17

*U.S. v. Cannons Eng'g,*
    899 F.2d 79 (1st Cir. 1990) ..................................................... 12, 14, 15

*United States v. Montrose Chem.,*
    50 F.3d 741 (1995) .................................................................................. 13, 14

*United States v. Western Processing Co.,*
    756 F. Supp. 1424 (W.D. Wash. 1990) ........................................................... 11

*Wellman v. Dickinson,*
    497 F. Supp. 824 (S.D.N.Y. 1980), aff'd 647 F.2d 163 (2d Cir. 1981)............. 15

**STATUTES**

42 U.S.C. § 9613(f)...........................................................................................passim

Cal. Code Civ. Proc. § 877 ...............................................................................passim

Cal. Code Civ. Proc. § 877.6 ............................................................................passim

Cal. Code Civ. Proc. § 877.6(c) .............................................................................. 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(f)................................................................................................. 7

WEST\275429472.1
MEMORANDUM OF PS & AS IN SUPPORT OF GOOD FAITH SETTLEMENT
CASE NO. 07-CV-1955-CB (WVG)

1  **I.      INTRODUCTION**

2          By this joint motion, Lockheed Martin Corporation ("Lockheed Martin"),

3  General Dynamics Corporation ("GD"), and the San Diego Unified Port District

4  ("Port District") (collectively, "Settling Parties") seek approval of their Settlement

5  Agreement,[1] which provides for the environmental remediation of two adjacent

6  sediment sites located on the San Diego Bay – the former Tow Basin facility site,

7  and Lockheed Marine Terminal and Railway Facility site (the "Sites"). The

8  proposed remediation is to be governed by the San Diego Regional Water Quality

9  Control Board through the (presently draft) Cleanup and Abatement Order No. R9-

10  2017-0021 ("CAO"). The Settling Parties also seek contribution protection as

11  authorized by the Uniform Comparative Fault Act ("UCFA"), the Comprehensive

12  Environmental Response, Compensation and Liability Act ("CERCLA"), and under

13  California law.

14          Under the Settlement Agreement, GD agrees pay $850,000 to Lockheed

15  Martin toward the remediation of the Sites, and the Port District agrees to abate rent

16  required under the lease, contribute its staff time for the processing and

17  implementation of permits, and other commitments. In exchange, Lockheed Martin

18  has agreed to be solely responsible for the implementation and completion of the

19  remedial action through and until notification by the Regional Board confirming no

20  further remedial work is required. By this motion, the Settling Parties seek an Order

21  that:

22  /////

23  _____

24  [1] Lockheed Martin, GD and the Port District have agreed to the settlement terms
lodged as Exhibit A to the Declaration of George J. Gigounas, and are in the
process of gathering signatures to the Agreement. The Parties are filing this good

25  faith motion and settlement now to apprise the Court of the Agreement, and will
supplement this filing with the appropriate signature pages as promptly as possible.

26  It is the Parties' understanding that this filing fulfills the Parties' obligations under
the Court's March 2 Order. Because this settlement will, if approved, resolve the

27  litigation and moot the need for filing motions for leave to amend, GD and
Lockheed have refrained from filing their respective motions for leave to amend in

28  the interest of judicial economy, and with the understanding that they will be
afforded the opportunity to do so in the event the Agreement is not approved.

-1-

1      (1) finds the Settlement Agreement among Lockheed Martin, GD, and the

2  Port District is procedurally and substantively fair and reasonable, consistent with

3  applicable law, and in good faith;

4      (2) finds that Lockheed Martin, GD, and the Port District are entitled to

5  contribution protection for "Covered Matters" under Section 113(f) of CERCLA,

6  Section 6 of the UCFA, and California Code of Civil Procedure sections 877 and

7  877.6; and

8      (3) bars any claims against Lockheed Martin, GD, and/or the Port District for

9  contribution or equitable indemnity by any third party regardless of whether they

10  are brought under CERCLA section 113, or any other theory, relating to "Covered

11  Matters."

12      The settlement promotes the goals of CERCLA by facilitating the timely

13  environmental remediation of two sites in the San Diego Bay. The agreement

14  reached by the Settling Parties is a fair and reasonable compromise of their alleged

15  liabilities, and was reached only after years of privately mediated settlement

16  discussions. It is without collusion, fraud, or any tortious conduct aimed to injure

17  the interests of any third parties. The complexities and uncertainties of the

18  litigation, and the significant resources otherwise required to bring this case to trial,

19  support approval of the Settlement Agreement as fair and reasonable under

20  CERCLA and the UCFA, and in good faith under state law, and support the

21  requested bar portion of the order.

22      Accordingly, the Settling Parties respectfully request that the Court grant this

23  Motion and enter the proposed order finding the Settlement Agreement to be fair,

24  reasonable and consistent with the intent of CERCLA, the UCFA, and in good faith

25  under California law, and barring and dismissing all claims by any third party for

26  contribution or equitable indemnity, under CERCLA, state law, of any other theory,

27  relating to "Covered Matters" under the Settlement Agreement.

28  /////

## II.   PROCEDURAL AND FACTUAL BACKGROUND

The property subject to the Settlement Agreement encompasses two adjacent sites located at the Harbor Island East Basin of the San Diego Bay – the Tow Basin site and the Marine Terminal and Railway site. *See* Request for Judicial Notice ("RJN"), at Ex. 1. The Tow Basin site is the subject of this lawsuit, and the Marine Terminal and Railway facility is the subject of a separate, recently-filed lawsuit entitled *San Diego Unified Port District v. Lockheed Martin, et al.*, Case No. 3:16-cv-2026-L-KSC (J. Lorenz). The Settlement Agreement will resolve all claims in both actions. (*See* Declaration of George J. Gigounas ("Gigounas Decl.") at ¶ 3.)

### A.   The Tow Basin Site

The former Tow Basin facility ("Tow Basin") is located at 3380 North Harbor Drive, is approximately 61,630 square feet in area, and historically included a 13,000 square foot building that was demolished in 2004. (*See* RJN, Ex. 1, at 2.) The building included an open-top concrete water tank that was used to test various hull designs of boats, submersible vehicles, and seaplanes. (*Id.*) From 1954 to 1991, industrial operations were conducted at the Site by GD, Lockheed, and now-defunct Rohr Marine Incorporated ("RMI"). (*Id.* at 3-4.)

In the late 1990s, the Department of Toxic Substance Control began investigating soil and groundwater contamination at the Tow Basin site. On January 9, 1998, the Department of Toxic Substance Control issued an Imminent or Substantial Endangerment Remedial Action Order ("RAO") for the Site. The Order cited PCBs, TPH, mercury and VOCs as potential concerns, and required the Parties to investigate "the nature and full extent of hazardous substance contamination of air, soil, surface water and groundwater at the Site, including offsite areas affected by the Site," as well as to perform any remedial action necessary to address such contamination. (Gigounas Decl., ¶ 5, Ex. B.) Shortly after the RAO was issued, the parties (GD, Lockheed and the Port District) entered into an Interim Settlement and Participation Agreement, to cooperate in the

-3-

investigation and cleanup of hazardous substances at the Site, and to split investigatory costs. After receiving "no further action" letters from DTSC for both soil (2004) and groundwater (2009 & 2010), only the sediment investigation remained. DTSC transferred state lead agency oversight for the sediment cleanup to the Regional Board.

In 2009, the Regional Board began investigating marine sediment impacts at the Tow Basin and began administrative proceedings. Over the course of several years, with the Regional Board, the parties engaged in a lengthy process to investigate and assess the Tow Basin site conditions, and to develop a sediment remedial plan. This process was initially performed under the Sediment Quality Objectives ("SQOs"), which is an incomplete set of guidelines for enclosed bays and estuaries to assess sediment impacts to benthic communities. Later, because the SQO process proved costly and time-intensive, Lockheed Martin and GD explored other remedial approaches at nearby sediment sites. In 2014, Lockheed Martin and GD prepared a "Remedial Proposal" for the Regional Board's review, followed by a draft Remedial Action Plan on October 31, 2014. (Gigounas Decl. ¶ 5.)

Following additional investigations and several mediation sessions, on October 21, 2016, the Regional Board issued an Administrative Draft Cleanup and Abatement Order No. R9-2016-0208 that covered both the Tow Basin and Marine Terminal and Railway Sites. (*Id.* at ¶ 6.) A revised Draft Order was issued on January 30, 2017. (*Id.* at ¶ 7.) The revised Draft Order issued by the Regional Board concluded that "[d]ischarges of polychlorinated biphenyls (PCBs), metals, and other pollutant wastes to the San Diego Bay throughout the years have resulted in the accumulation of contaminants in marine sediments along the north shore of central San Diego Bay." (RJN, Ex. 1, at 2.)

### B.    Marine Terminal and Railway Facility Site

The Former Lockheed Marine Terminal and Railway Facility ("Marine Terminal and Railway") is located at 1160 Harbor Island Drive and consists of a

-4-

1  laboratory building, and a pier and railway that extends into the East Basin. (*Id.* at

2  3.) The Marine Terminal and Railway facility was the site of a variety of

3  maintenance and industrial operations beginning in the 1960s. (*Id.*)

4      In 2011, the Regional Board issued Investigative Order No. R9-2011-0026

5  requiring Lockheed Martin to sample and analyze sediments at three stations and to

6  integrate the results using the benthic triad method. Based on "soil, groundwater,

7  catch basin, building material, and sediment sampling results" the Board

8  determined that the "chemicals of concern at the Site [were] divalent metals,

9  mercury, and PCBs." (RJN, Ex. 2, at 3.) Recently, the 2011 Marine Terminal

10  Investigative Order has been superseded by the Draft Cleanup and Abatement

11  Order issued on October 21, 2016, and revised January 30, 2017 covering both

12  Sites. (Gigounas Decl. ¶ 9.)

13      **C.      The Parties' Alleged Activities at the Sites**

14      In the draft CAO, the Regional Board found that the Sites have been

15  contaminated by discharges resulting from years of industrial operations. The draft

16  CAO concludes that GD, Lockheed Martin, RMI, and the Port District "are

17  responsible for discharges of wastes to sediment in the East Basin of San Diego

18  Bay." (RJN, Ex. 1, at 3.)

19      **1.      General Dynamics**

20      GD operated at the Tow Basin facility from 1954-1970. (RJN, Ex. 1, at 3-4.)

21  During this time, the Tow Basin facility was used by Electric Boat, a division of

22  GD's subsidiary, Convair, to test and develop hull designs for deep submersible

23  vehicles and seaplanes. (*Id.*) The Regional Board identified GD as a "person

24  responsible" for waste discharges that "cause or threaten to cause a condition of

25  pollution or nuisance" at the Tow Basin site. (*Id.* at 3.)

26      **2.      Lockheed Martin**

27      Lockheed Martin and its various entities operated at the Tow Basin site from

28  1970 to 1983, and then again from 1986 to 1991. (*Id.* at 4.) After purchasing the

building at the Tow Basin in 1970, Lockheed Martin used the concrete water tank to test "various hull designs of boats, submersible vehicles, and seaplanes." (*Id.*) Lockheed Martin continued to use the facility until 1983, and then leased the Tow Basin from the Port District between 1986 to 1991. (*Id.*)

Since 1966, Lockheed Martin has occupied the Marine Terminal and Railway facility. The draft CAO states, "[f]rom 1971 through 2009 deep submergence vehicle and deep submergence rescue vehicle maintenance operations were conducted at the Railway Facility." (*Id.*) Lockheed Martin leased the property from the Port District, with the term of the lease expiring in 2015. (*Id.*) In the draft CAO, the Regional Board identifies Lockheed Martin as a "person responsible" for waste discharges that "cause or threaten to cause a condition of pollution or nuisance" at the Sites. (*Id.* at 3-4.)

### 3.    Port District

In 1962, the Port District was created as a special government entity to administer certain public lands along the San Diego Bay. The Port District holds and manages as trust property on behalf of the People of the State of California the land occupied by the former Tow Basin and Marine Terminal and Railway Sites.

Over time, the Port District leased the Sites to GD, Lockheed Martin, and RMI to conduct industrial operations on the properties. Moreover, in 1983, RMI purchased the Tow Basin structures from Lockheed Martin and leased the parcel from the Port District. During this time period, RMI "conducted similar operations to those of LMC until 1986." (*Id.* at 4.) In 1986, the Port District took ownership of the Tow Basin and building when "RMI relinquished the facility due to bankruptcy." (*Id.*) The Regional Board identified the Port District as a "person responsible" for waste discharges that "cause or threaten to cause a condition of pollution or nuisance." (*Id.* at 3-4.)

/////

/////

### D.   The Lawsuits

In 2005, the Port District filed the instant action against Lockheed Martin and GD in San Diego Superior Court, seeking to recover costs the Port District allegedly incurred to investigate and remediate the Tow Basin site, and to compel Lockheed Martin and GD to perform further investigation and cleanup. (*See* Dkt. No. 1.) In 2005, Lockheed Martin and GD filed answers and counterclaims against the Port District. (Gigounas Decl. ¶ 10.) In 2006, the case was submitted to mediation and the Parties entered into an Interim Cost Sharing Agreement ("2006 Agreement") where again the Parties agreed to share investigation costs for the Site. (Gigounas Decl. ¶ 11.)

On October 9, 2007, the Parties removed the action to federal court. (Dkt. No. 1.) On January 30, 2008, this Court approved a phased discovery plan submitted by the Parties pursuant to Fed. R. Civ. P. 26(f). (*See* Dkt. No. 10.) The Court subsequently amended the Discovery Plan on September 17, 2009 to extend the time period for site investigation phase of discovery, as described below. (Dkt. No. 24.) Since the approval of the discovery plan, the action has not been actively litigated, with the Parties providing periodic case management conference statements to the Court.

A separate lawsuit filed by the Port District against Lockheed Martin to address the Marine Terminal and Railway Facility site is now pending before Judge Lorenz in the Southern District of California, entitled *San Diego Unified Port District v. Lockheed Martin Corp. et al.*, Case No. 3:16-cv-2026-L-KSC. The two actions are related, but this Court declined to consolidate them under the low-number rule. On December 5, 2016, Lockheed Martin moved to dismiss portions of the Port District's Complaint, but to facilitate efforts towards reaching the Settlement Agreement, the case was stayed until March 9, 2017. (Gigounas Decl. ¶ 12); *San Diego Unified Port District v. Lockheed Martin*, Case No. 3:16-cv-02026-L-KSC [Dkt. Nos. 25 & 27].

-7-

### E. Mediations

For nearly a decade, the Settling Parties, each represented by experienced counsel, have been involved in protracted, arm's length settlement discussions and a mediation process regarding the remediation approach and allocation of costs before Timothy V.P. Gallagher, an experienced environmental litigation mediator. Several mediation sessions have occurred over the last two years with Mr. Gallagher, and the Parties have also engaged in periodic status conferences with Magistrate Judge Gallo since 2011. This settlement is a result of the mediation sessions conducted before Mr. Gallagher, heavily contested negotiations, and conferences with the Court.

### F. The Contamination and Estimated Cleanup Costs

The extent and nature of the sediment contamination at the Sites is well documented in numerous environmental investigations and reports prepared for the Regional Board. (Gigounas Decl. ¶ 13.) Based on the proposed Remedial Action Plan, the estimated sediment remediation cost for the two Sites is approximately $3.3 million. (*Id.* at ¶ 14.)

## III. PROPOSED SETTLEMENT TERMS

Under the Settlement Agreement, and with all parties expressly denying any liability, GD and the Port District have agreed to contribute time and payment toward the remediation of the Sites. In particular, GD has agreed to pay $850,000 to Lockheed Martin in full and final settlement of all claims asserted by the Port District and Lockheed Martin against GD in this lawsuit, including claims for past oversight costs, past response costs, current response costs and future response costs. (Gigounas Decl., Ex. A, § 2.3(a).) The Port District has agreed to (1) abate the rent required under the operative lease for a period of 36 months, (2) contribute the value of its staff time to process and implement the Coastal Development Permit required of Lockheed Martin, and (3) waive its right to reimbursement of past oversight costs from Lockheed Martin and GD. (*Id.*, Ex. A, § 2.2(a).) The Port

-8-

District has also covenanted that it will not assert a claim for natural resource damages wholly within the site, with additional limitations. (*Id.* at § 2.2(d).)

In exchange, Lockheed Martin, without admitting and expressly denying any liability, has agreed to be solely responsible for implementing and completing the remedial action at the Sites as encompassed within the draft CAO and proposed Remedial Action Plan ("RAP") through and until notification by the Agency that no further remedial work is required. (*Id.* at § 2.1(a).) Lockheed Martin has agreed to ensure the contemplated remediation is completed to the Regional Board's satisfaction. (*Id.*) Lockheed Martin has also agreed to "removal all installations and improvements from the [Marine Terminal Facility] premises and restore the MTF premises" in accordance with its proposed demolition plan. (*Id.* at § 2.1(b).) Lockheed Martin has agreed to "pay or reimburse the Port District for Future Development Costs" that arise after the effective date of the agreement, but not in excess of $2.5 million. (*Id.* at § 2.1(c).)

In reaching this Settlement Agreement, the Settling Parties considered the factual record, the potential litigation risks, and the avoidance of substantial costs of fact and expert discovery, preparing for trial, and trying the case. (Gigounas Decl. ¶ 15; Declaration of Kelly E. Richardson ("Richardson Decl.") ¶ 4; Declaration of Micheal Dobbs ("Dobbs Decl.") ¶ 3.) The settlement secures an important remediation in the San Diego Bay and resolves the Parties' liability under terms that are fair, reasonable, and in good faith, which is consistent with the purpose and intent of CERCLA.

## IV.   <u>STANDARDS OF REVIEW</u>

The Settling Parties seek an order approving the Settlement Agreement under CERCLA and the UCFA and providing the Parties contribution protection under Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), the UCFA, and California Code of Civil Procedure sections 877 and 877.6.

/////

-9-

## A.   CERCLA Favors Settlement and Allows Contribution Bars

"CERCLA encourages responsible parties to remediate hazardous sites without delay." *See City of San Diego v. Nat'l Steel & Shipbuilding Corp.*, No. 09-cv-2775 WQH BGS, 2015 WL 1808527, at *10 (S.D. Cal. Apr. 21, 2015); *Burlington N. & Santa Fe Ry. Co v. U.S.,* 556 U.S. 599, 602 (2009); *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 947 (9th Cir. 2002) ("A fundamental purpose and objective of CERCLA is to encourage the timely cleanup of hazardous waste sites."). The Courts have recognized a strong federal interest in promoting settlement of complex CERCLA actions. *See e.g., Cal. Dep't of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910, 915 (9th Cir. 2010) ("Another important purpose of CERCLA is to encourage early settlement between potentially responsible parties and environmental regulators.")

In reviewing a CERCLA settlement, a district court must determine whether the agreement is procedurally and substantively "fair, reasonable, and consistent with CERCLA's objectives." *Arizona v. City of Tucson*, 761 F.3d 1005, 1011-12 (9th Cir. 2014) When evaluating a settlement, the Court does not conduct a trial on the merits, nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Instead, a presumption of fairness arises when (1) counsel is experienced in similar litigation, (2) settlement was reached through arm's-length negotiations, and (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently. *City of San Diego*, 2015 WL 1808527, at *11.

## B.   Section 6 of the Uniform Comparative Fault Act

Section 6 of the UCFA provides:

A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the

-10-

released person's equitable share of the obligation, determined in accordance with the provisions of Section 2.

UCFA, 12 U.L.A 147 § 6. The UCFA promotes CERCLA's policy of encouraging settlements and providing for equitable apportionment of responsibility, more easily resolving complex partial settlements and eliminating the need for a good faith hearing. *United States v. Western Processing Co.,* 756 F. Supp. 1424, 1430-31 (W.D. Wash. 1990). The Ninth Circuit recently confirmed that a district court has discretion under CERCLA to adopt either the UCFA or the Uniform Contribution Among Tortfeasors Act ("UCATA") to allocate liability to non-settling defendants in private-party contribution actions under CERCLA. *AmeriPride Servs. Inc. v. Texas E. Overseas Inc.*, 782 F.3d 474, 487 (9th Cir. 2015). In a similar circumstance in *City of San Diego v. Nat' Steel & Shipbuilding Corp.*, the Southern District of California determined that the "UCFA's proportionate share approach is consistent with the underlying goals of section 113(f)(1) and provides the most equitable method of apportioning fault." 2015 WL 1808527, at *13. The UCFA, therefore, should govern the effect of this settlement.

## C.     California Code of Civil Procedure Section 877 and 877.6

This Motion likewise seeks contribution protection for the Parties under California Code of Civil Procedure sections 877 and 877.6. Section 877 affords contribution protection to an alleged joint tortfeasor that has settled its alleged liability in good faith. Section 877.6 provides:

> A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

Cal. Code Civ. Proc. § 877.6(c). "Applying Section 6 of UCFA and the procedural requirements of . . . [CCP] Section 877.6 will allow the parties to achieve finality in their settlements, and is warranted by the good-faith nature of the settlements." *AmeriPride Servs*., 2007 WL 1946635, at *10-*11; *Adobe Lumber, Inc. v. Hellman*,

-11-

1    2010 U.S. Dist. LEXIS 139778 at *2 (E.D. Cal. March 4, 2010) ("Pursuant to

2    UCFA § 6 and the California Code of Civil Procedure § 877.6, any and all claims

3    against the settling defendant arising out of the matters asserted in this action or

4    addressed in the Settlement Agreement, regardless of when asserted or by whom,

5    are barred."); *Tyco Thermal Controls LLC v. Redwood Indus*., 2010 U.S. Dist.

6    LEXIS 91842 at *30-*35 (N.D. Cal. 2010).

7        Relevant factors in determining the good faith of a settlement under section

8    877 include whether the amount is within the reasonable range of settling

9    tortfeasor's proportional share of comparative liability, a recognition that a settlor

10   should pay less in settlement than he would if he were found liable after a trial, and

11   the absence of any evidence of collusion or fraud. *Tech-Bilt, Inc. v. Woodward-*

12   *Clyde Assocs*., 38 Cal. 3d 488, 499 (1985).

13   **V.     THE SETTLEMENT AGREEMENT SHOULD BE APPROVED**

14       The Settling Parties seek an order approving the Settlement Agreement under

15   CERCLA and the UCFA and providing contribution protection under Section

16   113(f) of CERCLA, 42 U.S.C. §9613(f), the UCFA, and California Code of Civil

17   Procedure sections 877 and 877.6, thus extinguishing the Parties' liability to

18   persons that are not parties to the Settlement Agreement. The basis for this relief is

19   that the Settlement Agreement is a fair and reasonable resolution of the Actions,

20   consistent with the goals of CERCLA, and resolves decade-old litigation.

21       **A.     The Settlement Agreement is Procedurally and Substantively Fair**

22       In CERCLA settlements, fairness has both procedural and substantive

23   components. *U.S. v. Cannons Eng'g*, 899 F.2d 79, 86 (1st Cir. 1990). "To measure

24   procedural fairness, a court should ordinarily look to the negotiation process and

25   attempt to gauge its candor, openness, and bargaining balance." *Id*.; *accord Arizona*

26   *v. Nucor Corp*., 825 F. Supp. 1452, 1456 (D. Ariz. 1992). Regarding substantive

27   fairness, the Ninth Circuit has held that "the proper way to gauge the adequacy of

28   settlement amounts to be paid by settling [parties] is to compare the proportion of

-12-

1   total projected costs to be paid by the settlors with the proportion of liability

2   attributable to them, and then to factor into the equation any reasonable discounts

3   for litigation risks, time savings, and the like that may be justified." *United States v.*

4   *Montrose Chem.*, 50 F.3d 741, 747 (1995). The settlement now before the Court

5   satisfies both requirements.

6   **B.      The Settlement Agreement Is Entitled to a Presumption of**
       **Fairness.**

7

8          In a good faith determination proceeding, a presumption of fairness arises

9   where: (1) counsel is experienced in similar litigation; (2) settlement was reached

10  through arm's-length negotiations; and (3) investigation and discovery are

11  sufficient to allow counsel and the court to act intelligently. *See Linney v. Alaska*

12  *Cellular P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d

13  1234 (9th Cir. 1998). Here, the Settlement Agreement was entered into in good

14  faith after extensive arms'-length settlement discussions between sophisticated

15  parties represented by counsel experienced in these matters. Further, the Settlement

16  Agreement results from years of investigation and litigation. Those proceedings

17  involved extensive submissions to the Regional Board, scientific investigations and

18  many years of private settlement discussions. (Gigounas Decl. ¶ 16; Richardson

19  Decl. ¶ 2; Dobbs Decl.¶ 4.) This Settlement Agreement is therefore entitled to a

20  presumption of fairness.

21  **C.      The Settlement Agreement Is Procedurally Fair Even Without a**
       **Presumption of Fairness.**

22

23         Even absent a presumption of fairness, the Settlement Agreement entered

24  into by Lockheed Martin, GD, and the Port District is procedurally fair. All parties

25  in this action have had access to information concerning the contamination, the

26  cleanup process, and the costs incurred and projected to be incurred in addressing

27  the contamination. All parties have been represented by able counsel experienced in

28  environmental matters, and the mediations have been conducted under the

-13-

1    supervision of a seasoned mediator, Mr. Gallagher. The Settlement Agreement is,

2    thus, "the product of fair play." *Cannons Eng'g*, 899 F.2d at 87. Further, the

3    negotiations leading to the settlement were the product of arms-length, candid and

4    highly-debated negotiations over years, an open exchange of information, and equal

5    bargaining power. The Settlement Agreement is therefore procedurally fair.

6
7
          **D.**      <u>**The Settlement Agreement Is Substantively Fair Even Absent Any**</u>
<u>**Presumption of Fairness.**</u>

8         The touchstone of substantive fairness is whether there is "some reasonable

9    linkage between the factors" used to evaluate comparative fault and the shares of

10    the settling parties. *Cannons Eng'g,* 899 F.2d at 87. "[T]he chosen measure of

11    comparative fault should be upheld unless it is "arbitrary, capricious, and devoid of

12    a rational basis." *Id*.; *Nucor*, 825 F. Supp. at 1459. Further, deference to the settling

13    parties' evaluation of the underlying facts concerning comparative fault is

14    warranted where "affected parties, themselves knowledgeable and represented by

15    experienced lawyers, have hammered out an agreement at arm's length and

16    advocate its embodiment in a judicial decree." *Montrose Chem*., 50 F.3d at 746

17    (internal quotations omitted) (quoting *Cannons Eng'g*, 899 F.2d at 84).

18         Here, despite the fact that the parties dispute liability for the contamination,

19    they have reached a resolution that allocates costs among the responsible parties.

20    GD has agreed to pay $850,000, which is a significant percent of the projected cost

21    to remediate *both* Sites, even though GD only operated at the Tow Basin.

22    (Gigounas Decl., Ex. A, at §2.3(a); Richardson Decl. ¶ 3.) The Port District has

23    agreed to abate rental payments and contribute valuable staff time to process

24    permitting approvals, both of which provide significant valuable monetary, and

25    non-cash consideration toward the remediation efforts. (Dobbs Decl. ¶ 5.) In

26    exchange, the Settlement Agreement obligates Lockheed Martin to address the

27    entire future remediation for both Sites, and ensure the completion of the

28    remediation to the satisfaction of the Regional Board, significant and risky financial

-14-

1    obligations for Lockheed Martin. (Gigounas Decl., Ex. A, at § 2.1(a).) Lockheed

2    Martin has agreed to this even though the parties disagree on what contamination at

3    the Sites is attributable to Lockheed Martin's activities. The Settlement Agreement

4    is therefore substantively fair.

5            **E.    The Settlement Agreement Is Reasonable.**

6            In considering the reasonableness of a CERCLA settlement, the settlement's

7    "likely efficaciousness as a vehicle for cleansing the environment is of cardinal

8    importance." *Cannons Eng'g*, 899 F.2d at 89; *see Nucor*, 825 F. Supp. at 1464 (a

9    court "will consider both the efficacy of the settlement in compensating the public

10   for actual and anticipated remedial and response costs and the relative strength of

11   the parties' litigating positions"). Here, the settlement facilitates and provides for

12   the remediation of two Sites on San Diego Bay, of importance to the community

13   and the goals of CERCLA. The Settlement Agreement is more than reasonable and

14   "a presumption in favor of the settlement" is appropriate. *See City of N.Y. v. Exxon

15   Corp.*, 697 F. Supp. 677, 692 (S.D.N.Y. 1988) (citing and quoting *Wellman v.

16   Dickinson*, 497 F. Supp. 824, 830 (S.D.N.Y. 1980), aff'd 647 F.2d 163 (2d Cir.

17   1981)).

18           **F.    The Settlement Agreement Is Consistent with CERCLA's
19                   Objectives.**

20           A CERCLA settlement must also must be "consistent with the 'overarching

21   principles [of CERCLA]: accountability, the desirability of an unsullied

22   environment, and promptness of response activities.'" *Nucor*, 825 F. Supp. at 1464

23   (quoting Cannons Eng'g, 899 F.2d at 90); *City of San Diego*, 2015 WL 1808527, at

24   *15. This settlement serves these principles.

25           By agreeing to implement the remediation, Lockheed Martin has stepped

26   forward to enable the Sites to be remediated under the draft CAO. GD and the Port

27   District have agreed to fund a significant portion of the remedial costs and

28   contribute additional efforts and resources to facilitate a timely remediation. The

-15-

1   Settlement Agreement will therefore enable work to occur at the Sites, and to avoid

2   the significant delays and transaction costs associated with protracted, multi-party

3   litigation, thereby directing resources toward remediation of the Sites and not to

4   more litigation, the exact goal which CERCLA is intended to promote.

5   **VI.    THE PARTIES ARE ENTITLED TO CONTRIBUTION PROTECTION**

6

7        The Parties are entitled to contribution protection under Section 6 of the

8   UCFA and CERCLA section 113(f) for all claims for contribution or equitable

9   indemnity that may be asserted against them in the future by third-parties to the

10  extent the claims are encompassed within Covered Matters. For instance, Section 6

11  of the UCFA, provides that a court may issue a bar order discharging a responsible

12  person "from all liability for contribution…." U.C.F.A. § 6. This court, and other

13  district courts within the Ninth Circuit, have entered contribution bars when

14  approving settlements under Section 6 of UCFA. *See, e.g.*, *City of San Diego*, 2015

15  WL 1808527, at *15; *see also AmeriPride Servs. Inc. v. Valley Indus. Serv., Inc.*,

16  2007 WL 1946635, at *4 (E.D. Cal. 2007) ("[W]ithin the Ninth Circuit, a court's

17  authority to review and approve settlements and to enter bar orders has been

18  expressly recognized."); see also *Tyco,* 2010 WL 3211926 (N.D. Cal. Aug. 12,

19  2010) (barring claims for contribution and indemnity under the UCFA); *Adobe*

20  *Lumber, Inc. v. Hellman*, 2009 WL 256553 at 5 (E.D. Cal. Feb. 3, 2009).

21       Here, the Settling Parties have shown that their settlement is more than fair

22  and reasonable, and the responsible parties currently involved in the litigation have

23  entered into this agreement, rendering a global settlement of the two lawsuits. Thus,

24  there is no party that will be adversely affected in this litigation. Accordingly, this

25  Court should confirm that the Settling Parties are protected from contribution and

26  equitable indemnity claims, and dismiss and bar all such claims against them

27  arising in the future.

28  /////

**A.    Contribution Protection Should Also Should Be Granted Under California Code of Civil Procedure Section 877.6**

Sections 877 and 877.6 of the California Code of Civil Procedure provide another basis for dismissing and barring all state law contribution claims. *Acme Fill Corp. v. Althin CD Med., Inc.*, No. C 91-4268 MMC, 1995 WL 822664, at *7-8 (N.D. Cal. Nov. 2, 1995). These provisions provide that a court's determination that a settlement was made in good faith bars any other joint tortfeasor or co-obligator from asserting any further claims against the settling defendant for contribution or indemnity based on theories of comparative negligence or fault. Cal. Code Civ. Proc. §§ 877, 877.6.

Federal courts apply the criteria set forth by the Supreme Court of California in the leading case of *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* to determine whether a particular settlement involving the resolution of state law claims is made in good faith. *Tyco Thermal Controls*, 2010 U.S. Dist. LEXIS 91842, at *41-*42 (citations omitted). These factors include: (1) a rough approximation of the claimant's total recovery and the settlor's proportionate liability; (2) the amount paid in settlement; (3) a recognition that a settlor should pay less in settlement than it would if it were found liable after trial; and (4) the potential for the existence of collusion, fraud, or tortious conduct aimed to injure the interest of the non-settling parties. *See Tech-Bilt, Inc. v. Woodward-Clyde & Associates,* 38 Cal. 3d 488, 500 (1985). Any joint tortfeasor or co-obligor who challenges a good faith settlement bears the burden of proof to show that the settlement is "so far 'out of the ballpark'" in relation to the factors expressed in *Tech-Bilt* as to be inconsistent with the equitable objectives of the statute. *N. County Contractor's Ass'n v. Touchstone Ins. Servs.*, 27 Cal. App. 4th 1085, 1091 (1994) (citation omitted).

An analysis of the *Tech-Bilt* factors demonstrates that the Settlement Agreement is appropriate, fair, and reasonable. Lockheed Martin is responsible for implementing the remedial action under the draft CAO and ensuring its completion

-17-

to the satisfaction of the Regional Board. (Gigounas Decl. ¶ 2, Ex. A.) Lockheed Martin is making this commitment despite its belief that its fair share of liability is significantly lower. GD has agreed to pay $850,000 toward the remediation and the Port District has agreed to abate rent and contribute the additional valuable time, experience, and resources of its staff to facilitate the timely remediation, though both GD and the Port District contend their liability is much less or non-existent. There is no collusion, fraud, or other tortious conduct, and no such claim could legitimately be made. The Court should therefore find that the Settlement Agreement is reasonable and entered into in good faith in accordance with Code of Civil Procedure section 877.6, and enter an order barring and dismissing any future asserted third-party state law claims for contribution or equitable indemnity against the Parties.

## VII.   <u>CONCLUSION</u>

The Settlement Agreement is fair, reasonable, entered into in good faith, and promotes the goals of CERCLA. Approval of the Settlement Agreement will facilitate the timely remediation of two sites within the East Basin of the San Diego Bay, and will resolve two pending lawsuits. Lockheed Martin, GD, and the Port District respectfully request that the Court approve the Settlement Agreement, and provide contribution protection to the Parties for claims asserted within the Settlement Agreement under Section 113(f) of CERCLA, Section 6 of the UCFA and California Code of Civil Procedure sections 877 and 877.6.

Dated:  March 16, 2017             **DLA PIPER LLP (US)**


By:  _/s/  *George J. Gigounas*____
George Gigounas
Kimberly S. Hyde

Attorneys for Defendant and Counter-Claimant LOCKHEED MARTIN CORPORATION

| 1 | Dated:  March 16, 2017 | **LATHAM & WATKINS LLP** |
|---|---|---|
| 2 | | |
| 3 | | By: _/s/ *Kelly E. Richardson*_ |
| | | Kelly E. Richardson |
| | | Jennifer Casler-Goncalves |
| 4 | | Benjamin D. Gibson |
| 5 | | Attorneys for Defendant and Counter-Claimant GENERAL DYNAMICS |
| 6 | | CORPORATION |
| 7 | | |
| 8 | Dated:  March 16, 2017 | **SAN DIEGO UNIFIED PORT DISTRICT** |
| 9 | | |
| | | By: _/s/ *John N. Carter*_ |
| 10 | | Thomas A. Russell, Gen. Counsel |
| | | Ellen F. Gross, Asst. Gen. Counsel |
| 11 | | John N. Carter, Dep. Gen. Counsel |
| 12 | | **KELLEY DRYE / JACKSON GILMOUR & DOBBS LLP** |
| 13 | | |
| 14 | | By: _/s/ *Micheal W. Dobbs*_ |
| | | William J. Jackson |
| 15 | | Micheal W. Dobbs |
| 16 | | Attorneys for Plaintiff SAN DIEGO UNIFIED PORT DISTRICT |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

-19-