# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO UNIFIED PORT DISTRICT,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>GENERAL DYNAMICS CORPORATION; LOCKHEED MARTIN CORPORATION; LOCKHEED MARTIN ENGINEERING & SCIENCES COMPANY,<br><br>　　　　　　　　　　　Defendants. | Case No. 07-cv-1955-BAS-WVG<br><br>**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF SAN DIEGO UNIFIED PORT DISTRICT'S MOTION TO ENFORCE SETTLEMENT**<br>**(ECF No. 118)** |

These consolidated actions arise out of environmental contamination emanating from two properties located alongside the San Diego Bay. The San Diego Unified Port District sued General Dynamics Corporation and Lockheed Martin Corporation for allegedly contaminating sediment in the San Diego Bay while conducting industrial activities at the properties.

In 2017, the Court approved the parties' 300-page Settlement Agreement. As part of the settlement, Lockheed Martin agreed to take remedial action that satisfies the San Diego

Regional Water Quality Control Board. Events, however, have not gone as planned. Lockheed Martin and the Regional Water Board are embroiled in a dispute over the scope of the remediation. Lockheed Martin claims the Regional Water Board drastically moved the goalposts for the cleanup, leading to a petition for writ of mandate in the San Diego Superior Court. That lawsuit seeks to force the Regional Water Board to restore cleanup terms similar to those Lockheed Martin contends the parties contemplated in their Settlement Agreement. The petition also argues the settlement in this Court has been "vitiated" by the agency's new cleanup terms. The Regional Water Board is not a party to the lawsuit in this Court, however. The dispute in this Court instead concerns how liability for the contamination should be allocated among the three potentially responsible parties.

The Port District now moves to enforce the Settlement Agreement, arguing Lockheed Martin is in breach of its promises. The Port District asks the Court to compel Lockheed Martin to complete the cleanup and withdraw pleadings in the lawsuit against the Regional Water Board. The motion also asks the Court to enjoin the state court "from entering any rulings on the subject matter of the Settlement." Lockheed Martin contends the Port District's motion is unripe because if the company succeeds in state court, this Court's ruling would likely be moot. General Dynamics weighs in, too, arguing concessions in Lockheed Martin's response address the gravamen of the Port District's motion, and the parties have not complied with their dispute resolution procedure.

The Court agrees. To leave no doubt, the Settlement Agreement approved in this Court remains in full force and effect and binds the Port District, Lockheed Martin, and General Dynamics. This Court has exclusive jurisdiction to interpret and enforce the Settlement Agreement. That said, the Court is unpersuaded that intervening in Lockheed Martin's dispute with the Regional Water Board is appropriate. The Court is likewise unconvinced that the Port District has complied with the Settlement Agreement's dispute resolution procedure. Hence, for the following reasons, the Court **DENIES WITHOUT PREJUDICE** the Port District's Motion to Enforce Settlement (ECF No. 118).

## I. BACKGROUND

The Court summarized the history of this long-running dispute in its Order Granting Motion to Confirm Settlement and Bar and Dismiss Claims ("Dismissal Order"). (ECF No. 105.) Hence, the Court provides only a snapshot here.

<u>Settlement</u>. Under the Settlement Agreement, the parties deny liability but agree to contribute time and resources toward remediating the contamination. (Settlement Agreement §§ 2.1–2.3, 5.1, ECF No. 106-1.) Lockheed Martin agreed to implement the Remedial Action Plan required under the Regional Water Board's Cleanup and Abatement Order ("CAO"). (*Id. §* 2.1(a).) Based on the then-proposed Remedial Action Plan, the estimated cost to remediate the premises was $3.3 million. (Gigounas Decl. ¶¶ 13–14, ECF No. 105-5.) Lockheed Martin also agreed to remove certain installations and improvements under a proposed demolition plan. (Settlement Agreement § 2.1(b).) As for General Dynamics, it promised to contribute to the cleanup by paying $850,000 to Lockheed Martin. (*Id.* § 2.3.) Meanwhile, the Port District agreed to abate rent for Lockheed Martin, contribute staff time for a Coastal Development Permit, and waive certain claims for reimbursement and damage to natural resources. (*Id.* § 2.2(a), (d).) Finally, the parties agreed to a dispute resolution process:

> Each Party agrees to provide the other Parties no fewer than thirty calendar days' notice of any dispute, claim, or difference arising out of or in connection with this Agreement, or the breach or invalidity thereof, including disputes related to disposal of contaminated dredge spoils in the future, prior to commencing any proceedings in any court or tribunal. During the thirty day notice period, the Settling Parties agree to attempt in good faith to resolve the issue. If the Settling Parties do not reach resolution of the issue, any dispute concerning this Agreement or disposal costs must be resolved first by participation in a mediation with Timothy Gallagher, or with another mediator mutually agreed upon by the parties. *Only if such mediation is unsuccessful shall the parties seek relief in the United States District Court for the Southern District of California*. To the maximum extent permitted by law, the Settling Parties agree to personal jurisdiction, subject matter jurisdiction, and venue in that Court for purposes of resolving disputes under this Agreement.

(*Id.* § 7.3 (emphasis added).)

After a hearing, the Court approved the parties' settlement. (ECF Nos. 111, 112.) The Court incorporated the Settlement Agreement throughout its Dismissal Order. (*E.g.*, Dismissal Order 7:10–8:13, 20:14–22:2.) Further, upon dismissing the parties' claims with prejudice, the Court expressly retained jurisdiction:

> The Court shall retain jurisdiction over both the subject matter of this Settlement Agreement and the parties for the duration of the performance of the terms and provisions of the Settlement Agreement for the purpose of enabling the parties, and each of them, to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate to construe, implement, or enforce compliance with the terms of the Settlement Agreement, which rights and obligations shall survive the dismissal of these actions.

(*Id.* 21:15–21.)

<u>Petition</u>. Events did not unfold as expected. In 2023, Lockheed Martin filed a Verified Petition for Writ of Mandate and Request for Stay against the Regional Water Board and the California State Water Resources Control Board. (State Pet., ECF No. 118-11.) Lockheed Martin's lawsuit allegedly follows several years' worth of negotiations and disputes with Regional Water Board on the scope of the cleanup. (*Id.* ¶¶ 36–68.)

In the Petition, Lockheed Martin claims it "is ready, willing, and able to execute the background cleanup that was mutually agreed upon" in the Settlement Agreement. (State Pet. ¶ 2.) Lockheed Martin contends, however, that the Regional Water Board violated state law by "dramatically moving the goal posts" for the cleanup and issuing "an entirely new CAO in August 2022." (*Id.* ¶¶ 3, 5.) This new CAO allegedly upends the Settlement Agreement "and decades of work by multiple parties and consultants—an administrative process that took nearly fifteen months, during which time the Site could have been remediated." (*Id.* ¶ 5 (emphasis omitted).) Hence, Lockheed Martin advances various theories to convince the San Diego Superior Court to require the Regional Water Board to rescind the 2022 CAO and return to the 2017 cleanup proposal. (*Id.* ¶¶ 167–215.)

As part of its arguments, Lockheed Martin also casts doubt on the continued viability of the Settlement Agreement. One of Lockheed Martin's state court arguments is that the Regional Water Board improperly omitted the Port District and General Dynamics from the 2022 CAO as responsible parties. (State Pet. ¶¶ 125–139.) Lockheed Martin contends that "while the terms of the 2017 Settlement Agreement have not changed, the 2017 Settlement Agreement itself was *vitiated* upon issuance of an entirely new and substantially different CAO and that Lockheed Martin does not agree to be the sole implementing party of the expanded cleanup." (*Id.* ¶ 130.) Thus, Lockheed Martin claims the Settlement Agreement "does not govern [the parties'] respective allocation of liability at the [properties] under the 2022 CAO." (*Id.* ¶ 134.)

The Port District now moves to enforce the Settlement Agreement in light of Lockheed Martin's Petition and failure to complete the cleanup. (ECF No. 118.) Lockheed Martin opposes. (ECF No. 129.) Both the Port District and General Dynamics reply. (ECF Nos. 130, 131.) The Court finds this Motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L. R. 7.1(d)(1).

## II.   ANALYSIS

The Court begins by confirming its jurisdiction. A court may retain ancillary jurisdiction to enforce a settlement agreement if the parties agree and the court embodies the agreement in its dismissal order. *Kelly v. Wengler*, 822 F.3d 1085, 1095 (9th Cir. 2016) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)). As recapped above, the Court incorporated the parties' Settlement Agreement throughout its Dismissal Order and expressly retained jurisdiction at the parties' request. Lockheed Martin unequivocally subjected itself to this Court's jurisdiction and panoply of enforcement powers. (Dismissal Order 21:15–21.) The Court thus can consider the Port District's claim that Lockheed Martin is in breach of the Settlement Agreement and has therefore violated the Dismissal Order. *See id.* at 1095–96 (affirming court's civil contempt finding and award of attorneys' fees based on breach of an incorporated settlement agreement).

The Port District contends Lockheed Martin breached the parties' deal by failing to complete the cleanup, by challenging the enforceability of the Settlement Agreement in state court, and by neglecting to complete certain demolition in a timely manner. (Mot. 7:17–20:15.) Lockheed Martin counters that the Motion is premature because the resolution of its state court action "will narrow the outcomes of the Port's Motion" and likely moot this Court's ruling. (Opp'n 11:2–3, 12:10–13:7.) In addition, Lockheed Martin admits that "*this* Court presides over the Settlement" and contends it would be improper to presume the state court will rule that Lockheed Martin can escape the Settlement Agreement. (*Id.* 1:16, 14:13–15:13.) General Dynamics weighs in last. It argues the Port District's motion is moot because Lockheed Martin's Opposition addresses the substance of the Port's demands. (Reply 1:14–16.)

At this juncture, the Court is persuaded that wading into the state court dispute is unnecessary. The Court has reviewed Lockheed Martin's Verified Petition for Writ of Mandate. The linchpin of Lockheed Martin's suit is that the Regional Water Board's conduct is unlawful under state law. The Court expresses no opinion on the merits of Lockheed Martin's claims. It is enough to say here, however, that the Court finds interfering with Lockheed Martin's action against a nonparty is unwarranted—without reaching the parties' arguments concerning the Anti-Injunction Act. *See Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998) (noting the exceptions to the Anti-Injunction Act "allow federal courts to enjoin state courts in cases where 'some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case'" (quoting *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 295 (1970))). There is a dispute between Lockheed Martin and the Regional Water Board over the scope of the cleanup required, and any ruling by the state court would either moot this Court's determination or require the parties to overhaul their briefing and positions. Indeed, if Lockheed Martin prevails, it will need to complete the cleanup contemplated by the 2017 CAO and will lack a justification if it fails to do so.

If Lockheed Martin does not prevail, it will need a determination from this Court interpreting the Settlement Agreement as not applying to the 2022 CAO. Lockheed Martin will otherwise be in breach of the Settlement Agreement and in violation of the Court's Dismissal Order.

At the same time, the Court appreciates the Port District's concern over Lockheed Martin's arguments addressing the "vitiation" of the Settlement Agreement. The Court underscores that the Dismissal Order remains in full force and effect. The incorporated Settlement Agreement binds the Port District, Lockheed Martin, and General Dynamics. And this Court's jurisdiction over the matter is exclusive. Even where a court's retention of jurisdiction does "not include the word 'exclusive,'" the Ninth Circuit reasons "exclusivity is inferred" because "it would make no sense for the district court to retain jurisdiction to interpret and apply its own judgment to the future conduct contemplated by the judgment, yet have a state court construing what the federal court meant in the judgment." *Flanagan*, 143 F.3d at 545; *accord Republic Bldg. Co., Inc. v. Charter Twp. of Clinton, Michigan*, 81 F.4th 662, 668 (6th Cir. 2023) ("When a consent judgment contains a provision stating that a court retains jurisdiction over its interpretation and enforcement, that jurisdiction is presumed exclusive."). Hence, only this Court may enforce compliance with the Dismissal Order or determine that the Settlement Agreement has been "vitiated." Moreover, federal courts like this one presume state courts follow the law. *E.g.*, *Jeffers v. Lewis*, 38 F.3d 411, 415 (9th Cir. 1994). Thus, given these rules and Lockheed Martin's admission that this Court presides over the Settlement Agreement, the Court finds granting further relief is not warranted.

The Court turns to one final issue. General Dynamics argues the parties' multi-step dispute resolution process has not been followed and "asks the Court to ensure that the parties comply with the Settlement Agreement's dispute resolution provisions to ensure that its rights are protected." (Reply 2:17–18.) This point is well taken. The Port District does not demonstrate it complied with the process excerpted above, including for its argument that Lockheed Martin has failed to complete certain demolition under the

Settlement Agreement. The Court thus will deny without prejudice the Port District's motion. The Court reminds Lockheed Martin, too, that any claim that the Settlement Agreement has been invalidated will need to proceed under this process and include General Dynamics's participation. The Court therefore will order the parties to comply with the Settlement Agreement's dispute resolution process and require that any future request submitted to this Court include evidence of this compliance.

### III.   CONCLUSION

In light of the foregoing, the Court **DENIES WITHOUT PREJUDICE** the Port District's Motion to Enforce the Settlement Agreement (ECF No. 118). The Court confirms that the Dismissal Order and the Settlement Agreement incorporated therein remain in full force and effect. Further, the Court **ORDERS** the parties to comply with the Settlement Agreement's "Disputes" provision—§ 7.3. Any dispute submitted to this Court concerning the Settlement Agreement, including a renewal of the Port District's Motion, must be accompanied by a declaration attesting that each step of the dispute resolution process has been satisfied.

**IT IS SO ORDERED.**

**DATED: February 8, 2024**

Hon. Cynthia Bashant
United States District Judge